

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



Signed March 12, 2009                      United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| HEREFORD BIOFUELS, L.P., *et al.*,[1] | : | Case No. 09-30453 (SGJ) |
| Debtors. | : | (Jointly Administered) |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR
THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF DEBTOR HEREFORD
BIOFUELS, L.P., (II) APPROVING CERTAIN BIDDING PROTECTIONS,
(III) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES AND (IV) SCHEDULING AN AUCTION AND SALE HEARING**

This matter coming before the Court on the motion (the "Motion")[2] of Hereford

Biofuels, L.P. (the "Seller") and the other above-captioned debtors (collectively, the "Debtors")

seeking, pursuant to sections 105, 363 and 503 of title 11 of the United States Code (the

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Hereford Biofuels, L.P. (7548); Hereford Biofuels Holdings, LLC (9762); PHE I, LLC (7511); and PHE II, LLC (9412). The address of each of the Debtors is 4100 Spring Valley, Suite 1002, Dallas, Texas 75244.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed such terms in the Motion.

DLI-6240363v3

"Bankruptcy Code") and Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), an order (i) authorizing and approving the procedures that are attached hereto as Annex 1 (the "Bidding Procedures") for the sale of substantially all of the Seller's assets (the "Sale"), (ii) scheduling an Auction and Sale Hearing in connection with the Sale, and (iii) approving the form and manner of notice of the Auction and the Sale Hearing; the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein (the "Bidding Procedures Hearing"); and the Court having considered the statements of counsel and the evidence presented at the Bidding Procedures Hearing;

IT IS HEREBY FOUND AND DETERMINED THAT:

A. The Debtors have offered good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the Motion to the extent provided in this Order, including approval of (i) the Bidding Procedures, attached hereto as Annex 1, (ii) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed and Assigned Agreements (the "Cure Amounts") so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Assumed and Assigned Agreements, and (iii) the form and manner of notice of the Auction and Sale Hearing described in the Motion and this Order.

B. The proposed notice of the Sale and the Bidding Procedures, as set forth in the Motion and this Order, is appropriate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice shall be required for the Sale or the assumption and assignment of executory contracts and unexpired leases.

C.  The Debtors have offered good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling an Auction and subsequent Sale Hearing to consider approval of the Sale free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and the assumption and assignment of any executory contracts and unexpired leases contemplated by a Successful Bid pursuant to section 365 of the Bankruptcy Code.

IT IS HEREBY ORDERED THAT:

1.  The Motion is GRANTED to the extent provided herein.

2.  The Bidding Procedures, attached hereto as Annex 1, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid proceedings relating to the Seller's assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.  The deadline for submitting a Qualified Bid shall be April 20, 2009 at 4:00 p.m. Central Time (the "<u>Bid Deadline</u>").

4.  If the Seller receives only one Qualified Bid, it will not hold an Auction, and the Qualified Bidder may be named the Successful Bidder.

5.  All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

6.  If the Seller receives at least two Qualified Bids, the Seller shall conduct the Auction on April 22, 2009 at 10:00 a.m. Central Time at the offices of Jones Day, 2727 N. Harwood St., Dallas, TX 75201, or such other place and time as the Seller shall notify Qualified Bidders, the Committee and other parties.

7. Notwithstanding anything to the contrary contained in this Order, (a) the Seller may determine, in consultation with the Committee, to enter into a stalking horse agreement with a Potential Bidder (other than a Potential Bidder that is an affiliate of the Debtors) at any time prior to two business days prior to the Bid Deadline (the "Stalking Horse Agreement"), and (b) the Stalking Horse Agreement may include expense reimbursement for the Potential Bidder (provided that such expense reimbursement shall not exceed $350,000 (the "Maximum Expense Reimbursement") and shall be subject to Court approval upon a motion of the Potential Bidder that includes documentation to support the expenses), but otherwise shall not include any break-up, termination or similar fee. In the event that the Seller enters into a Stalking Horse Agreement, notwithstanding anything to the contrary contained herein or in the Bidding Procedures:

(a) in order to be considered a Qualifying Bid, a bid must propose a purchase price greater than the aggregate consideration offered pursuant to the Stalking Horse Agreement by at least $400,000, which equals the sum of (i) the Maximum Expense Reimbursement and (ii) $50,000;

(b) the Stalking Horse shall be deemed a Qualified Bid and the Potential Bidder party thereto shall be deemed a Qualified Bidder for all purposes and requirements of the Bidding Procedures;

(c) if the Seller does not receive any Qualified Bids other than the Stalking Horse Agreement, it will not hold an Auction and the Stalking Horse Agreement will be the Successful Bid and the Potential Bidder party thereto will be named the Successful Bidder;

(d) if at least one Qualified Bid other than the Stalking Horse Agreement is received by the Bid Deadline, the Seller will conduct the Auction; and

(e) any bid submitted by the Potential Bidder party to the Stalking Horse Agreement will include a credit equal to $350,000, which equals the Maximum Expense Reimbursement.

8. If the Seller enters into a Stalking Horse Agreement, the Seller will promptly (and in no event later than 2 business days prior to the Bid Deadline) (a) inform in

writing each Potential Bidder that it has done so and will provide or make available to each Potential Bidder a copy of the Stalking Horse Agreement, and (b) file with the Court and service on the parties identified on the service list being maintained in these chapter 11 cases a notice indicating that the Seller has entered into a Stalking Horse Agreement.

9. If the Debtors' senior secured lenders (the "Senior Lenders") do not object to the Seller's entry into the Stalking Horse Agreement, the Seller shall be authorized to enter into the Stalking Horse Agreement without further Court order. If the Senior Lenders object to the Seller's entry into the Stalking Horse Agreement, the Seller's entry into the Stalking Horse Agreement shall be subject to a further order of the Court after notice and a hearing.

10. The Court shall convene the Sale Hearing on **April 24, 2009 at 9:30 a.m.** Central Time or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale to the Successful Bidder. The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing.

11. Objections to approval of the Sale, including the sale of the Seller's assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, must be in writing, state the basis of such objection with specificity and be filed with this Court and served so as to be received on or before April 20, 2009 at 4:00 p.m. Central Time by the following parties: (a) Hereford Biofuels, L.P., 4100 Spring Valley Road, Suite 1002, Dallas, Texas 75244, Attn: Jonathan Quenzer, Fax: 972-455-3880, Email: Jonathanq@pandaethanol.com; (b) counsel to the Debtors, Jones Day, 2727 N. Harwood Street, Dallas, Texas 75201, Attn: Gregory M. Gordon, Esq., Fax: 214-969-5100, Email: gmgordon@jonesday.com; (c) counsel to Société Générale, Hughes Hubbard & Reed, LLP, One

Battery Park Plaza, New York, New York 10004-1482, Attn: Patrick T. Gartland, Fax: 212-299-6240, Email: gartland@hugheshubbard.com; and (d) counsel to the Committee, Kane Russell Coleman & Logan PC, 3700 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas 75201, Attn: Joseph A. Friedman, Esq., Fax: 214-777-4299, Email: jfriedman@krcl.com (collectively, the "Notice Parties").

12. Objections to (a) the Cure Amounts set forth in the Cure Schedule and (b) the assumption and assignment of any executory contract or unexpired lease identified in the Cure Schedule must be in writing, state the basis of such objection with specificity and be filed with the Court, and be actually received on or before April 8, 2009 at 4:00 p.m. Central Time by the Notice Parties; provided, however, that the Debtors shall file a notice identifying the Successful Bidder with the Court and serve such notice upon each party identified in the Cure Schedules, and the deadline for objecting to the assignment of the Assumed and Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance shall be the commencement of the Sale Hearing.

13. Unless an objection to the assumption and assignment of an Assumed and Assigned Agreement is timely filed and served, all counterparties to the Assumed and Assigned Agreements shall (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Seller and the Successful Bidder shall be entitled to rely solely upon the Cure Amounts set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment; and (c) be forever barred and estopped from asserting or claiming against the Seller or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreement or that there is any

- 6 -
DLI-6240363v3

objection or defense to the assumption and assignment of such Assumed and Assigned Agreement. In addition, the Cure Amounts set forth in the Cure Schedule shall be binding upon the nondebtor parties to the Assumed and Assigned Agreements for all purposes in these chapter 11 cases and otherwise, and will constitute a final determination of the total Cure Amounts required to be paid by the Seller in connection with the assumption and assignment of the Assumed and Assigned Agreements.

14. Where a nondebtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amounts (the "Disputed Cure Amounts"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Cost prior to the Sale Hearing, and subject to the Successful Bidder's consent to such resolution, the Seller shall promptly provide the Committee and the Senior Lenders and other parties in interest notice and an opportunity to object to such proposed resolution or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be heard at the Sale Hearing or at such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement will be heard at the Sale Hearing.

15. The form of the Auction and Sale Hearing Notice and the Assumption and Assignment Notice are appropriate and sufficient for all purposes and no other or further notice shall be required if the Debtors serve such notices in the manner provided in the Motion and this Order.

16. Within two business days after entry of this Order, or as soon as practicable thereafter, the Seller shall (a) place a publication version of the Auction and Hearing Notice for one day in the *Hereford Brand*, *Ethanol Producer Magazine* and the national editions

- 7 -

DLI-6240363v3

of *The Wall Street Journal* and *The New York Times* and (b) place a conspicuous copy of the Auction and Hearing Notice on both the website for the Hereford Facility at www.pandaethanol.com/facilities/hereford/index.html and the main website at www.pandaethanol.com.

17. No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.

18. All bidders at the Auction shall be deemed to have consented to the core jurisdiction of this Court and waived any right to jury trial in connection with any disputes relating to the Auction and the Sale.

19. The Asset Purchase Agreement between Hereford Biofuels, L.P., as the seller, and Hereford Acquisition Company, LLC, as the purchaser, dated as of February 9, 2009, is hereby deemed terminated.

20. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

# # # END OF ORDER # # #

Prepared by:

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Robert J. Jud (TX 24041217)
JONES DAY
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

Attorneys for Debtors

**ANNEX 1**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") for the sale of substantially all of the assets of Hereford Biofuels, L.P. (the "Debtor"). Copies of the form of asset purchase agreement proposed by the Debtor (the "Seller Proposed Purchase Agreement") are available by sending a written request to counsel to the Debtor, Gregory M. Gordon, Esq., Jones Day, 2727 Harwood Street, Dallas, Texas 75201. The sale of the assets (the "Sale") is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") pursuant to sections 363 and 365 of the Bankruptcy Code and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

## II. The Sale Hearing

The Debtor will seek the entry of an order from the Bankruptcy Court at a hearing to be held on April 24, 2009 at 9:30 a.m. Central Time (the "Sale Hearing") at the United States Bankruptcy Court for the Northern District of Texas, 1100 Commerce Street, Dallas, Texas 75242 approving and authorizing the Sale to the Successful Bidder (as defined below) as determined in accordance with the Bidding Procedures.

## III. Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must deliver (unless previously delivered) to the Debtor, on or before the Bid Deadline (as defined below), the following materials:

    (a)    An executed confidentiality agreement in form and substance satisfactory to the Debtor; and

    (b)    A statement demonstrating to the Debtor's satisfaction a *bona fide* interest in purchasing, and the financial ability to purchase, the assets of the Debtor.

Each person or entity that delivers such materials to the Debtor on or before the Bid Deadline in a form reasonably acceptable to the Debtor is hereinafter referred to as a "Potential Bidder." The Debtors' senior secured lenders (the "Senior Lenders") shall be deemed Potential Bidders for all purposes and requirements of the Bidding Procedures. The Debtors will deliver a copy of all confidentiality agreements and statements of interest to counsel to the Committee, who will not share the confidentiality agreements and statements of interest or the contents thereof with the Committee members.

After a Potential Bidder delivers all of the materials required by subparagraphs (a) and (b) above, the Debtor shall provide the Potential Bidder access to the data room.

**IV.     Determination by the Debtor**

The Debtor, in consultation with the Official Committee of Unsecured Creditors appointed in the Debtor's case (the "Committee"), shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders, (c) negotiate any bid made to acquire the assets and (d) make such other determinations as are provided in the Bidding Procedures (collectively, the "Bidding Process").  Neither the Debtor nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the assets to any person who is not a Potential Bidder.  The Debtor will consult with the Senior Lenders to the same extent that it is required to consult with the Committee under the Bidding Procedures, but only if the Senior Lenders are not active bidders at the applicable time.

**V.     Due Diligence**

The Debtor has established an electronic data room into which substantial information about the Debtor and its assets and business have been deposited.  All Potential Bidders will be granted full access to the data room by the Debtor's financial advisor, Imperial Capital, LLC.  The Debtor shall afford any Potential Bidder such additional due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtor, in its business judgment, determines to be reasonable and appropriate.  The Debtor may designate a representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders.  No additional due diligence will be made available to Potential Bidders after the Bid Deadline (as defined below).

**VI.     Bid Deadline**

A Potential Bidder that desires to make a bid shall deliver copies of its bid by facsimile and email to (a) Hereford Biofuels, L.P., 4100 Spring Valley Road, Suite 1002, Dallas, Texas 75244, Attn:  Jonathan Quenzer, Fax:  972-455-3880, Email:  Jonathanq@pandaethanol.com, (b) Jones Day, 2727 N. Harwood Street, Dallas, Texas 75201, Attn:  Gregory M. Gordon, Esq., Fax:  214-969-5100, Email:  gmgordon@jonesday.com; (c) Hughes Hubbard & Reed, LLP, One Battery Park Plaza, New York, New York 10004-1482, Attn:  Patrick T. Gartland, Fax: 212-299-6240, Email:  gartland@hugheshubbard.com, and (d) Kane Russell Coleman & Logan PC, 3700 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas 75201, Attn:  Joseph A. Friedman, Esq., Fax:  214-777-4299, Email:  jfriedman@krcl.com, by no later than April 20, 2009 at 4:00 p.m. Central Time (the "Bid Deadline").

**VII.     Bid Requirements**

All bids must include:

> (a)     an offer to acquire the assets in the form of the Seller Proposed Purchase Agreement, marked to show any proposed amendments and modifications to such agreement (the "Marked Agreement"); and
>
> (b)     an agreement that the Potential Bidder's offer is binding and irrevocable until the earlier to occur of (i) the consummation of the Sale of the assets to another person or entity and (ii) May 31, 2009.

Except for any credit bid submitted by the Senior Lenders, bids must be (i) cash-only bids and (ii) accompanied by (a) a certified check payable to the order of the Debtor, or wire transfer to the Debtor, in the amount of $500,000 (a "Good Faith Deposit") and (b) written evidence of available cash, a commitment for financing or ability to timely obtain a satisfactory commitment if selected as the Successful Bidder (provided, however, that the closing of the Sale shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction as the Debtor may reasonably request.

The Debtor, in consultation with the Committee, will review each bid received from a Potential Bidder to ensure that it meets the requirements set forth above. A bid received from a Potential Bidder that meets the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The Debtor, in consultation with the Committee, will determine whether each bid meets the requirements of a Qualified Bid.

A Qualified Bid will be valued by the Debtor, in consultation with the Committee, based upon any and all factors that the Debtor and the Committee deem pertinent, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating a transaction with the Potential Bidder, (c) any excluded assets or executory contracts and leases, and (d) any other factors that the Debtor and the Committee may deem relevant to the Sale.

The Debtor, in its business judgment, and in consultation with the Committee, reserves the right to reject any bid if such bid:

(a) is on terms that are more burdensome or conditional than the terms of the Seller Proposed Purchase Agreement;

(b) requires any indemnification of such Potential Bidder in its Marked Agreement;

(c) is not received by the Bid Deadline;

(d) except in respect of a credit bid, includes non-cash consideration; or

(e) is subject to any due diligence, financing condition or other contingencies (including representations, warranties, covenants, and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the assets other than as may be included in the Seller Proposed Purchase Agreement;

Any bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.

**VIII. Auction Participation**

Only each Potential Bidder (including the Senior Lenders) who has submitted a Qualified Bid will be eligible to participate at the Auction (as defined below). At least one business day prior to the Auction, each Potential Bidder who has submitted a Qualified Bid must inform the

Debtor whether it intends to participate in the Auction. The Debtor will promptly thereafter inform in writing each Potential Bidder who has expressed its intent to participate in the Auction of the identity of all other Potential Bidders that may participate in the Auction. If the Debtor receives only one Qualified Bid, it will not hold an Auction and the Qualified Bidder may be named the Successful Bidder.

## IX.   Auction

If at least two Qualified Bids are received by the Bid Deadline, the Debtor will conduct an auction (the "Auction"). The Auction shall take place at 10:00 a.m. Central Time on April 22, 2009, at the offices of counsel for the Debtor, Jones Day, 2727 Harwood Street, Dallas, Texas 75201, or such later time or such other place as the Debtor shall designate in a subsequent notice to all Qualified Bidders. Only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Representatives of the Committee and any other parties the Debtor deems appropriate shall be able to attend and observe the Auction.

At the Auction, participants will be permitted to increase their bids in an open "outcry" auction. The bidding shall start at the amount offered in the highest Qualifying Bid plus $100,000, and will continue in increments of at least $100,000 in cash until the bidding ceases. The Senior Lenders will be entitled to credit bid, dollar for dollar, any portion of their secured claims against the Debtor. The Debtor may alter the Bidding Procedures at the Auction if, in its reasonable judgment, in consultation with the Committee, such alteration will better promote the goals of the Auction, except that the Debtor may not prejudice the Senior Lenders' right to make a credit bid.

Immediately prior to the conclusion of the Auction, the Debtor, in consultation with the Committee, will: (a) review each bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; (b) determine the highest or best bid for the assets of the Debtor at the Auction (the "Successful Bid"); and (c) notify all Potential Bidders at the Auction, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder").

After determining the Successful Bid, the Debtor may determine, in its reasonable business judgment, in consultation with the Committee, which Qualified Bid is the next best bid (the "Next Best Bid").

In determining the Successful Bid and the Next Best Bid, a credit bid by the Senior Lenders that exceeds the cash bid of another Qualified Bidder will be deemed higher but not necessarily better than such cash bid.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction and the Sale of the assets.

**X.      Acceptance of Qualified Bids**

Notwithstanding anything to the contrary contained herein, the Debtor may reject (i) at any time before the Sale Hearing any bid that, in the Debtor's reasonable judgment, is inadequate or insufficient; or (ii) at any time before the entry of the Sale Order any bid that, in the Debtor's reasonable judgment, is not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale, or contrary to the best interests of the Debtor and its estate.

Subject to the approval of the Bankruptcy Court, the Debtor will sell the assets to the Qualified Bidder that submits the Successful Bid.  The Debtor's submission of the Successful Bid to the Bankruptcy Court shall not constitute the Debtor's acceptance of the bid.  The Debtor shall be deemed to have accepted a Qualified Bid only when such Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

If the Successful Bidder does not close the Sale by the date agreed to by the Debtor and the Successful Bidder, then the Debtor shall be authorized, but not required, to close with the party that submitted the Next Best Bid (the "Next Best Bidder"), without a further court order.

**XI.     No Fees for Potential Bidders or Qualified Bidders**

Potential Bidders or Qualified Bidders shall not be allowed any breakup, termination or similar fee.  Moreover, neither the tendering of a bid nor the determination that a bid is a Qualified Bid shall entitle a Potential Bidder or Qualified Bidder to any breakup, termination or similar fee and all Potential Bidders and Qualified Bidders waive any right to seek a claim for substantial contribution.

**XII.    Return of Good Faith Deposit**

The Good Faith Deposits of all Potential Bidders shall be held in escrow by the Debtor, but shall not become property of the Debtor's estate.  The Good Faith Deposit of each Potential Bidder shall be returned to such Potential Bidder within 48 hours after the earlier to occur of (a) the consummation of the Sale of the assets to another person or entity and (b) May 31, 2009.

**XIII.   Potential Stalking Horse**

Notwithstanding anything to the contrary contained herein, (a) the Debtor may determine, in consultation with the Committee, to enter into a stalking horse agreement with a Potential Bidder (other than a Potential Bidder that is an affiliate of the Debtors) at any time prior to two business days prior to the Bid Deadline (the "Stalking Horse Agreement"), and (b) the Stalking Horse Agreement may include expense reimbursement for the Potential Bidder (provided that such expense reimbursement shall not exceed $350,000 (the "Maximum Expense Reimbursement") and shall be subject to Court approval upon a motion of the Potential Bidder that includes documentation to support the expenses), but otherwise shall not include any break-up, termination or similar fee.  In the event that the Debtor enters into a Stalking Horse Agreement, notwithstanding anything to the contrary contained herein:

(a) in order to be considered a Qualifying Bid, a bid must propose a purchase price greater than the aggregate consideration offered pursuant to the Stalking Horse Agreement by at least $400,000, which equals the sum of (i) the Maximum Expense Reimbursement and (ii) $50,000;

(b) the Stalking Horse shall be deemed a Qualified Bid and the Potential Bidder party thereto shall be deemed a Qualified Bidder for all purposes and requirements of the Bidding Procedures;

(c) if the Debtor does not receive any Qualified Bids other than the Stalking Horse Agreement, it will not hold an Auction and the Stalking Horse Agreement will be the Successful Bid and the Potential Bidder party thereto will be named the Successful Bidder;

(d) if at least one Qualified Bid other than the Stalking Horse Agreement is received by the Bid Deadline, the Debtor will conduct the Auction; and

(e) any bid submitted by the Potential Bidder party to the Stalking Horse Agreement will include a credit equal to $350,000, which equals the Maximum Expense Reimbursement.

If the Debtor enters into a Stalking Horse Agreement, the Debtor will promptly (and in no event later than 2 business days prior to the Bid Deadline) (a) inform in writing each Potential Bidder that it has done so and will provide or make available to each Potential Bidder a copy of the Stalking Horse Agreement and (b) file with the Court and service on the parties identified on the service list being maintained in these chapter 11 cases a notice indicating that the Debtor has entered into a Stalking Horse Agreement.

If the Senior Lenders do not object to the Debtor's entry into the Stalking Horse Agreement, the Debtor shall be authorized to enter into the Stalking Horse Agreement without further Court order. If the Senior Lenders object to the Debtor's entry into the Stalking Horse Agreement, the Debtor's entry into the Stalking Horse Agreement shall be subject to a further order of the Court after notice and a hearing.