U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 27, 2009**

**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HEREFORD BIOFUELS, L.P., *et al.*,[1] | : | Case No. 09-30453 (SGJ) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

### ORDER AUTHORIZING (I) THE SALE OF
### SUBSTANTIALLY ALL OF THE ASSETS OF
### DEBTOR HEREFORD BIOFUELS, L.P. FREE AND CLEAR OF
### LIENS, CLAIMS AND ENCUMBRANCES AND (II) THE ASSUMPTION
### AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

This matter coming before the Court on the Motion of the Debtors for an Order

Authorizing (I) the Sale of Substantially All of the Assets of Debtor Hereford Biofuels, L.P. Free

and Clear of Liens, Claims and Encumbrances and (II) the Assumption and Assignment of

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Hereford Biofuels, L.P. (7548); Hereford Biofuels Holdings, LLC (9762); PHE I, LLC (7511); and PHE II, LLC (9412).  The address of each of the Debtors is 4100 Spring Valley, Suite 1002, Dallas, Texas 75244.

Executory Contracts and Unexpired Leases (the "<u>Sale Motion</u>")[2] filed by the above-captioned

debtors (collectively, the "<u>Debtors</u>") seeking authority to sell substantially all of the assets of

Debtor Hereford Biofuels, L.P. (the "<u>Seller</u>"); the Court having reviewed the Sale Motion, the

Bidding Procedures Motion, and the Lindloff Declaration; and this Court having entered an order

dated March 12, 2009 (the "<u>Bidding Procedures Order</u>" and attached as Annex 1 thereto,

the "<u>Bidding Procedures</u>") authorizing the Seller to conduct, and approving the terms and

conditions of, the Auction to consider offers for the Seller's assets; the Debtors having conducted

the Auction on April 22, 2009; and the Court having reviewed the Sale Motion, the asset

purchase agreement, dated as of April 22, 2009 [Docket No. 318] (as it has been or may be

amended, the "<u>Purchase Agreement</u>"), between the Seller and Ethanol Acquisition, LLC

(the "<u>Purchaser</u>") entered into following the Auction and all other papers filed with the Court

relating thereto and having considered the statements of counsel with respect to the Sale Motion

at the Sale Hearing; and the Court having found that (i) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b), (iii) notice of the relief sought in the Sale Motion and the Sale Hearing was sufficient

under the circumstances, and no further notice need be given; (iv) a sound business purpose

exists to grant the relief contained herein, and (v) there is good cause to waive the ten-day stay

imposed by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>"); and the Court having determined that the legal and factual bases set

forth (a) in the Sale Motion, (b) in the other papers filed by the Debtors and (c) at the Sale

Hearing, establish just cause to grant the relief ordered herein;

---

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Sale Motion, the Purchase Agreement or the Bidding Procedures.

DLI-6249158v4

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction and authority to hear and determine the Sale

Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (N) and (O).  Venue of these cases in

this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

sought herein are sections 105, 363, and 365 of the Bankruptcy Code, and Bankruptcy

Rules 2002, 6004, 6006 and 9014.

B.      This Sale Order constitutes a final and appealable order within the

meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and

Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054,

the Court expressly finds that there is no just reason for delay in the implementation of this Sale

Order, and expressly directs entry of judgment as set forth herein.

C.      As evidenced by the affidavits of service filed with the Court, proper,

timely, adequate and sufficient notice of the Sale Motion, the Auction, the sale of the Acquired

Assets and the Sale Hearing has been provided in accordance with Bankruptcy Rules 2002, 6004,

9006, 9007, 9008 and 9014 and in compliance with the Bidding Procedures Order.  Notice of the

Sale Hearing was also published in the *Hereford Brand*, *Ethanol Week* and the national editions

of *The Wall Street Journal* and *The New York Times*.  The Debtors provided due and proper

notice of the Sale, and assumption and assignment of each contract and lease (and related Cure

Amounts, if any) listed in the Notice of (I) Potentially Assumed and Assigned Executory

Contracts and Unexpired Leases and (II) Cure Amounts [Docket No. 107] (the "Assumption and

Assignment Notice") filed on February 13, 2009, to each non-debtor party to such contract or

lease.  The Debtors further provided due and proper notice of the Sale to any claimant or

potential claimant under any Environmental Laws.  Such notice was sufficient and appropriate

under the circumstances. No other or further notice of the Sale Motion, the Auction, the sale of the Acquired Assets, the Sale Hearing, the assumption and assignment of the Assumed Contracts or the entry of this Sale Order is necessary or shall be required.

D.       A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities as outlined in the Bidding Procedures Motion and the Bidding Procedures Order.

E.       The Seller has demonstrated a sufficient basis and the existence of compelling circumstances requiring it to enter into the Purchase Agreement, sell the Acquired Assets on the terms outlined therein and assume and assign the Assumed Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Seller's business judgment and in the best interests of the Seller, its creditors, and its estate.

F.       The Auction conducted by the Debtors, including the methodology for determination of the highest and best offer, was conducted in a manner that was reasonably certain to achieve the highest and best offer for the Acquired Assets. The Auction was conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Acquired Assets.

G.       At the conclusion of the Auction conducted in connection with the Bidding Procedures, the Purchaser was declared the highest and best bidder for the Acquired Assets, and Ethanol Europe, N.A. was determined to have submitted the Next Best Bid.

H.       The Debtors, the Purchaser and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order. As demonstrated by the evidence adduced at the Sale Hearing, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offers

to acquire the Acquired Assets, and (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets.  Additionally, the Debtors have, under the circumstances, adequately and appropriately marketed the Acquired Assets through, inter alia, the dissemination of information regarding the Acquired Assets to interested purchasers.

I.      The Debtors are the lawful owners of the Acquired Assets.

J.      The offer of the Purchaser, upon the terms and conditions set forth in the Purchase Agreement, including the form and the total consideration to be realized by the Seller pursuant to the Purchase Agreement, (i) is the highest and best offer received by the Seller, (ii) is fair and reasonable, (iii) is in the best interest of the Seller, its creditors and its estate, (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets, and (v) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and all other applicable laws of the United States, any state, territory, possession, or the District of Columbia.

K.      The Seller's determination that the Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Seller's business judgment.

L.      The Debtors have demonstrated compelling circumstances and a sufficient and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

M.      The Purchaser is not an "insider" or "affiliate" of the Debtors (as each such term is defined in the Bankruptcy Code).  The Purchaser is a buyer in good faith, as that term is

used in the Bankruptcy Code, and is entitled to the protections of sections 363(m) and 363(n) with respect to the Acquired Assets.  The Purchase Agreement was negotiated and entered into in good faith, based upon arm's length negotiations and without collusion or fraud of any kind.

N.      The Seller has full power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets by the Seller has been duly and validly authorized by all necessary action of the Seller.  No consents or approvals other than those provided for in the Purchase Agreement are required for the Seller to consummate the transactions described in the Purchase Agreement.

O.      The terms of the Purchase Agreement are fair and reasonable and the transactions contemplated therein are in the best interests of the Seller's estate.

P.      The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Seller, its estate, and its creditors, if either (i) the Sale and the assignment of the Assumed Contracts to the Purchaser were not free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever, except those expressly assumed by the Purchaser in the Purchase Agreement, or (ii) the Purchaser would, or in the future could, be liable for any of such interests, liens, claims and encumbrances, including, but not limited to, any claims against the Debtors based upon successor or vicarious liability or otherwise.

Q.      The Seller may sell the Acquired Assets free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever, except as otherwise provided in the Purchase Agreement, because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Those non-debtor parties with interests in the Seller's assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are

deemed to have consented to the Sale pursuant to 11 U.S.C. §§ 363(f)(2) and 365.  Those

non-debtor parties with interests in the Debtors' assets who did object fall within one or more of

the other subsections of 11 U.S.C. §§ 363(f) and 365.  Accordingly, all persons having liens,

claims, encumbrances or interests of any kind or nature whatsoever against or in any of the

Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or

asserting such liens, claims, encumbrances or interests against the Acquired Assets, the

Purchaser or any of its assets, property, successors or assigns.

       R.      The transfers contemplated by the Purchase Agreement do not and shall

not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or

claims of any kind or nature whatsoever, whether known or known, contingent or otherwise,

against the Debtors, any affiliate of the Debtors, or any other person, by reason of such transfers

under the laws of the United States, any state, territory or possession thereof, relating to the

operation of the Debtors' businesses before the Effective Time, except as specifically provided in

the Purchase Agreement, including but not limited to, any debts, liabilities, obligations,

commitments, responsibilities or claims based on any theory of antitrust, or successor or

transferee liability.

       S.      The transfers contemplated by the Purchase Agreement will, upon

consummation thereof, (i) be legal, valid and effective transfers of the Acquired Assets to the

Purchaser with no further action required on the part of the Debtors or the Sellers and (ii) vest the

Purchaser with good title to the Acquired Assets free and clear of all liens, claims and interests,

except as permitted in the Purchase Agreement.

DLI-6249158v4

T.    The Purchaser has agreed to accept assignment of the Assumed Contracts. The Assumed Contracts are property of the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code.

U.    The Seller may assume each contract and lease listed on Appendix II of the Purchase Agreement, as such Appendix II has been amended, and assign each contract and lease to the Purchaser or its designee pursuant to sections 363 and 365 of the Bankruptcy Code and this Sale Order notwithstanding any anti-assignment clause or other similar provision in any Assumed Contract, as provided by section 365(f) of the Bankruptcy Code.  The assumption and assignment of the Assumed Contracts listed on Appendix II of the Purchase Agreement, as such Appendix II has been amended, is in the best interest of the Seller and its estate, creditors and other parties in interest, representing the reasonable exercise of sound and prudent business judgment by the Seller.  The Purchaser and the Seller have provided evidence of adequate assurance of future performance by the Purchaser under the Assumed Contracts.

V.    The Purchaser (i) has cured, or has provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) has provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).

W.    The cure amounts (collectively, the "Cure Amounts"), if any, set forth in the Assumption and Assignment Notice with respect to each Assumed Contract other than any Assumed Contract with Idaho Energy Limited Partnership, d/b/a Energy Products of Idaho ("Idaho Energy") are the sole amounts necessary under sections 365(b)(l)(A) and (B) and

365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Assumed Contracts; provided, however, that the Cure Amount in respect of the Lurgi License Agreement shall be $100,000. In accordance with the method set forth in the Purchase Agreement, the Purchaser shall pay the Cure Amounts for each of the Assumed Contracts.

X.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Seller may sell the Acquired Assets free and clear of any interest in the Acquired Assets other than the Assumed Liabilities under the Purchase Agreement.

Y.     The Purchaser is assuming only the Assumed Liabilities, as defined and set forth in the Purchase Agreement, and is not assuming any obligations other than the Assumed Liabilities.

Z.     The Seller is assuming, assigning, and selling to the Purchaser only the Assumed Contracts in accordance with the terms of the Purchase Agreement and is not assuming, assigning, or selling any executory contracts or unexpired leases other than the Assumed Contracts.

AA.     Given all of the circumstances of the Debtors' chapter 11 cases and the adequacy and fair value of the Purchase Price and the assumption by the Purchaser of the Assumed Liabilities under the Purchase Agreement, the proposed Sale of the Acquired Assets to the Purchaser under the Purchase Agreement constitutes a reasonable and fair exchange of consideration and reasonable and sound exercise of the Seller's business judgment, and should be approved.

BB.     Consummation of the Purchase Agreement does not effect a de facto merger of any of the Debtors and the Purchaser or result in the continuation of any of the Debtors' businesses under the Purchaser's control. The Purchaser is not the alter ego of, or a

successor-in-interest to, any of the Debtors, nor is the Purchaser otherwise liable for any of the Debtors' debts and obligations, except to the extent otherwise provided for in the Purchase Agreement.

CC.     All findings of fact and conclusions of law announced by the Court at the Sale Hearing are incorporated herein.

DD.     Time is of the essence in consummating the Sale.  In order to maximize the value of the Acquired Assets, it is essential that the Sale occur promptly, and within the time constraints set forth in the Purchase Agreement.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

General Provisions

1.      The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be finding of fact, it shall be so deemed.

2.      The Sale Motion is GRANTED, as further described herein.

3.      All parties in interest have had the opportunity to object to the relief requested in the Sale Motion and all objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein that are not otherwise provided for by this Sale Order are OVERRULED on the merits in their entirety; provided, however, that all objections of Idaho Energy to the Sale, specifically the

assumption and assignment of any Assumed Contract to which Idaho Energy is a party, are preserved and not waived, and shall be heard by the Court at a later date to be set by the Court (the "Hearing").  The parties who did not object, or who withdrew their objections, to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Approval of the Purchase Agreement

4.      The Purchase Agreement and all of the terms and conditions thereof, are hereby approved.

5.      The sale to the Purchaser is approved pursuant to sections 105, 363 and 365 of the Bankruptcy Code, and the Seller and the Purchaser and their affiliates, officers, directors, employees and agents are authorized and directed to immediately take such actions as are necessary to consummate and implement the Purchase Agreement.  The terms and conditions of the Purchase Agreement are hereby approved in all respects and are binding upon the parties thereto.  Furthermore, the covenants contained in the Purchase Agreement, to the extent (if any) not already enforceable by their terms, shall be fully enforceable by the parties to the Purchase Agreement in accordance with and subject to the terms and conditions of the Purchase Agreement, effective retroactive to the Effective Time.

6.      The Seller, as well as its affiliates, officers and agents, are authorized and directed to execute and deliver the Purchase Agreement, together with all additional agreements, instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and effectuate the provisions of this Sale Order and the transactions approved hereby, all without further order of the Court.  Additionally, pursuant to section 363(b) of the Bankruptcy Code, the Seller is hereby authorized and empowered to fully assume, perform under, consummate, and implement the Purchase Agreement, together with such additional agreements, instruments and documents that may be reasonably necessary or desirable to

11

implement the Purchase Agreement, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of selling, assigning, transferring, granting, conveying, conferring and delivering to the Purchaser, or transferring to the Purchaser's possession, any or all of the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations, and make effective the transactions contemplated by the Purchase Agreement, all without further order of this Court.

<u>Transfer of the Acquired Assets</u>

7.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Seller is authorized to transfer the Acquired Assets in accordance with the terms of the Purchase Agreement, and, upon the closing under the Purchase Agreement, such transfers shall (a) be valid, legal, binding and effective transfers, (b) vest the Purchaser with all right, title and interest of the Seller in and to the Acquired Assets, and (c) be free and clear, unless otherwise specified in the Purchase Agreement, of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any Court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or their predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights,

contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, whether arising prior to or subsequent to the commencement of the Debtors' chapter 11 cases, and whether imposed by agreement, law, equity or otherwise, with all the same released, terminated and discharged as to the Acquired Assets, but with all of the same, to the extent not paid in full at closing, attaching to the proceeds of the sale of the Acquired Assets, in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets.

8.      All persons or entities holding liens, claims, encumbrances or interests of any kind or nature with respect to the Acquired Assets are hereby forever barred and estopped from asserting such liens, claims, encumbrances or interests of any kind or nature against the Purchaser, its successors or assigns, or the Acquired Assets.

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Seller to transfer the Acquired Assets to the Purchaser in accordance with this Sale Order and the terms of the Purchase Agreement, or otherwise interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets.

<u>Assumption and Assignment of Assumed Contracts to the Purchaser</u>

10.      All Assumed Contracts subject to the Sale Motion are in full force and effect and have not been terminated by operation of law, their own terms or otherwise.

11. Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, the Seller's assumption and assignment to the Purchaser of the Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are hereby deemed satisfied.

12. The Seller is hereby authorized and directed in accordance with 11 U.S.C. §§ 105(a) and 365 to (a) assume and assign to the Purchaser, effective upon the Closing of the Sale, the Assumed Contracts free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever, except as provided in the Purchase Agreement, and (b) execute and deliver to the Purchaser such agreements, documents or other instruments as may be necessary to sell, assign, transfer, convey and deliver the Assumed Contracts to the Purchaser.

13. The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. Pursuant to 11 U.S.C. § 365(k), the Seller shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Purchaser.

14. All defaults or other obligations of the Seller under any Assumed Contract arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon payment at the Closing of the Sale or as soon thereafter as practicable of the Cure Amounts with respect to each Assumed Contract.

DLI-6249158v4

15.     Except for the obligation to pay the Cure Amounts, each nondebtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Purchaser, or the property of any of them, any default existing as of the date of the entry of this Order, whether declared or undeclared or known or unknown; or, against the Purchaser, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors.

16.     The failure of the Seller or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Purchaser's rights to enforce every term and condition of the Assumed Contract.

17.     Any provisions in any Assumed Contract that prohibit or condition the assignment of any Assumed Contract or allow the non-debtor party to such Assumed Contract to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Seller and assignment to the Purchaser of the Assumed Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all rights, title, privilege and interest of the Seller under the applicable Assumed Contract.

18.     The payment of the Cure Amounts (if any) shall (a) effect a cure of all defaults existing thereunder as of the Effective Time, (b) compensate for any and all actual pecuniary loss to such non-debtor party resulting from such defaults, (c) constitutes satisfaction

in full of all amounts accrued as of the Effective Time and (d) together with the assumption and purchase of the Assumed Contracts by the Purchaser, constitute adequate assurance of future performance thereof. Upon the payment of the Cure Amounts, the Purchaser shall have assumed the Assumed Contracts and, pursuant to sections 363, 365(f), and 365(k) of the Bankruptcy Code, the assignment and sale by the Debtors of such Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Seller nor the Purchaser shall have any further obligations to the non-debtor parties to the Assumed Contracts other than the Purchaser's obligations under the Assumed Contracts that accrue on or after the Effective Time, or otherwise pursuant to the Assumed Liabilities.

19. Upon the Effective Time and the payment of the relevant Cure Amounts by the Purchaser, the Purchaser shall be deemed to be substituted for the Seller as a party to the applicable Assumed Contracts, and the Seller shall be relieved from all liability on such Assumed Contracts arising after the Effective Time. The Assumed Contracts, upon assignment to the Purchaser, shall be deemed valid and binding, in full force and effect in accordance with their terms.

20. The Purchaser has provided adequate assurance of its future performance under the relevant Assumed Contract within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

21. There shall be no rent accelerations, assignment fees, increases (including advertising rates), or any other fees charged to the Purchaser as a result of the assumption, assignment, and sale of the Assumed Contracts.

22. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Assumed Contracts are forever barred and enjoined from raising or asserting

against the Purchaser or the Acquired Assets any assignment fee, default, breach, or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Effective Time or arising by reason of the Closing, except for any post-petition amounts that are Assumed Liabilities being assumed by the Purchaser under the Purchase Agreement.

23. With regard to the assumption and assignment of the Lurgi Technology License, the Purchaser shall take no greater or lesser interest in the Lurgi Technology License than that interest owned by the Debtors, and all rights and claims of the Purchaser and Thermal Kinetics Systems, L.L.C. regarding the Lurgi Technology License as well as the licensing rights and interests of Thermal Kinetics Systems, L.L.C., separate and apart from the Lurgi Technology License, if any, are reserved and not waived.

24. Notwithstanding anything to the contrary in the Purchase Agreement or this Sale Order, the Debtors are not assuming and assigning any executory contract or unexpired lease with ICM, Inc. to the Purchaser, and any such contract or lease shall not constitute an Assumed Contract.

<u>Additional Provisions</u>

25. All objections of Idaho Energy to the Sale, including the objections [Docket Nos. 270 and 321] to the Cure Amounts and the Sale Motion, shall be heard and ruled upon at the Hearing to the extent not resolved prior to the Hearing. Neither this Sale Order nor the fact Idaho Energy did not examine any witnesses or otherwise offer any evidence at the Sale Hearing shall prejudice Idaho Energy with respect to the prosecution of its objections to the assumption and assignment of any contract between Idaho Energy and the Seller.

26. The Debtors shall not close a transaction with the Next Best Bidder absent further order of the Court, and all objections of the Senior Lenders to the Next Best Bid are

17

reserved.  If either (a) the sale of the Acquired Assets or (b) the sale under the asset purchase agreement dated as of April 22, 2009, among the Debtors, Lurgi, Inc., GEA Group, AG, and Factory Mutual Insurance Company and the Official Committee of Unsecured Creditors, is consummated, then the Next Best Bidder shall not have to close the sale transaction contemplated by the Next Best Bid.

27.     The Purchaser is not a successor to the Seller or its estate by reason of any theory of law or equity and the Purchaser shall have no liability or responsibility for any liabilities or other obligations of the Debtors arising under or related to the Acquired Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for:  (i) any fixed or contingent, liquidated or unliquidated, disclosed or undisclosed liability, obligation or claim against the Debtors or any of their predecessors or affiliates, whether based upon successor or vicarious liability or otherwise, and whether any of such items are known or unknown as of the Closing Date; (ii) any violation or alleged violation of any environmental laws; or (iii) liabilities under any pension, ERISA, tax, employment, labor, antidiscrimination laws or regulations, any products liability law, tort law, pending or threatened litigation, security interests, warranties, interests of any kind, known or unknown, liquidated or unliquidated, whether now existing or arising in the future, or debts of any kind or nature, all of which, if any, are retained by the Seller, except as otherwise expressly provided in the Purchase Agreement and this Sale Order.

28.     Except as otherwise expressly provided in the Purchase Agreement, the Purchaser shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment with respect to employees or former employees

of the Debtors. Except as otherwise expressly provided in the Purchase Agreement, the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which any Debtor is a party and relating to the Acquired Assets (including, without limitation, arising form or related to the rejection or other termination of any such agreement), and, except as expressly provided in the Purchase Agreement, the Purchaser shall in no way be deemed a party to or assignee of any such agreement, and no employee of Purchaser shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against Purchaser any and all claims arising from or relating to such agreement. All notices, if any, required to be given to the Debtors' employees prior to Closing pursuant to the Workers Adjustment and Retraining Notification Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Seller, and Purchaser shall have no duties, responsibility, or liability therefore.

29. The recitation, in the immediately preceding paragraph of this Sale Order, of specific agreement, plans or statutes is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, commitment or obligations referred to therein.

30. Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Seller or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Seller, the Acquired Assets, the ownership or

operation of the Acquired Assets prior to the closing of the Sale, or the Sale of the Acquired

Assets are forever barred, estopped, and permanently enjoined from asserting against the

Purchaser, its successors or assigns, its property, or the Acquired Assets, such persons' or

entities' interests.

31.     On and after the Closing Date, each of the Debtors' creditors asserting a

lien in any of the Acquired Assets is authorized and directed to execute such documents and take

all other actions as may be necessary to release its liens on or against the Acquired Assets being

transferred pursuant to the Purchase Agreement, as such liens may have been recorded or

otherwise exist; provided that the failure of any such creditors to comply with the provisions of

this paragraph shall in no way limit the release, discharge and termination of any such lien

against the Acquired Assets purchased as otherwise provided by this Sale Order.

32.     If any person or entity that has filed financing statements, mortgages,

mechanics' liens, lis pendens, or other documents or agreements evidencing claims against or in

the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to closing, in

proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of all interests which the person or entity has with respect to

the Debtors or the Acquired Assets or otherwise, then only with regard to the Acquired Assets

being acquired by the Purchaser pursuant to the Purchase Agreement, the Purchaser is hereby

authorized to file, register or otherwise record a certified copy of this Sale Order, which, once

filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all

claims against the Acquired Assets other than the Assumed Liabilities and all liabilities and

obligations under the Assumed Contracts.

33. This Sale Order is deemed for all purposes to be a full and complete general assignment, conveyance and transfer of the Acquired Assets and/or a bill of sale transferring the Seller's title and interest in the Acquired Assets to the Purchaser, free and clear of all liens, claims and interest, except those permitted in the Purchase Agreement, in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

34. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and provisions of the Purchase Agreement and the provisions of this Sale Order.

35. Each and every federal, state and local government agency or department and all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds and other similar persons are hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and this Sale Order.

36. All persons or entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

37. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

38.     Article 6 of the Uniform Commercial Code governing Bulk Sale Transfers and comparable state statutes are not applicable to the sale of the Acquired Assets to the Purchaser.

39.     Nothing contained in any plan of reorganization or liquidation confirmed in these bankruptcy cases or the order of confirmation confirming such plan shall conflict with or contradict the provisions of the Purchase Agreement or this Sale Order.  To the extent that any provision of this Sale Order is inconsistent with the provisions of the Purchase Agreement, any prior order (except that certain Order Approving Joint Emergency Motion by the Official Committee of Unsecured Creditors and Société Générale, as Administrative Agent for Prepetition Lenders Pursuant to Bankruptcy Rule 9019(b) To Approve Compromise of Controversy With Certain Lenders, entered on April 17, 2009, Docket No. 294), or any pleading with respect to the motions in these cases, the terms of this Sale Order control.

40.     The Purchaser is deemed a buyer in good faith of the Acquired Assets and thus entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

41.     The consideration provided by Purchaser for the Acquired Assets under the Purchase Agreement (a) shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and all other applicable laws of the United States, any state, territory, possession or the District of Columbia, and (b) is fair and reasonable, and the sale of the Acquired Assets and the related transactions may not be avoided under section 363(n) of the Bankruptcy Code.

42.     The terms and provisions of the Purchase Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon, and shall inure to

the benefit of, the Debtors, the Debtors' estates and the Debtors' creditors, the Purchaser and its affiliates, successors and assigns, and any affected third parties and persons or entities asserting a claim against or interest in or lien on the Debtors' estates or any of the Acquired Assets to be sold to the Purchaser pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee for the Debtors under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all respects.

43.    The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material and notice of such modification, amendment or supplement is provided to the Senior Lenders and the Committee.

44.    The failure specifically to reference any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court and the parties that all of the provision of the Purchase Agreement be authorized in their entirety, subject, however, to the specific terms of this Sale Order.

45.    The Seller and the Purchaser are hereby authorized and directed to take all actions reasonably necessary to effectuate the terms of the Purchase Agreement, the transactions contemplated thereunder and the provisions of this Sale Order, all without the necessity of any further order of the Bankruptcy Court.

46.    The provisions of Bankruptcy Rules 6004(g) and 6006(d) shall not apply to stay consummation of the sale of the Acquired Assets to the Purchaser under the Purchase Agreement, as contemplated in the Sale Motion and approved by this Sale Order, and the Seller

DLI-6249158v4

and the Purchaser are hereby authorized to consummate the transactions contemplated and approved herein immediately upon entry of this Sale Order.

47.    Any appeal seeking to enjoin or stay consummation of the Sale (the "Appeal") shall be subject to the appellant depositing or posting a bond in an amount equal to the then aggregate purchase price, and applicable damages, pending the outcome of the Appeal.

48.    The provisions of this Order are nonseverable and mutually dependent.

49.    This Court retains jurisdiction to (a) enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith; (b) compel delivery of the Acquired Assets to the Purchaser, (c) compel delivery of the Purchase Price; (d) compel specific performance of the Seller's and the Purchaser's obligations under the Purchase Agreement; (e) resolve any disputes arising under or related to the Purchase Agreement; (f) interpret, implement and enforce the provisions of this Sale Order; and (g) determine any disputes relating to or concerning the receipt, use, application or retention of the proceeds from the sale of the Acquired Assets.

### END OF ORDER ###

Prepared by:

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Robert J. Jud (TX 24041217)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Attorneys for Debtors

DLI-6249158v4